UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| KELVIN ANDRE SPOTTS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 10-353-GFVT |
| | ) | |
| v. | ) | |
| | ) | |
| OFFICER S. HOCK, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **& ORDER** |
| Defendants. | ) | |

**\*\*\*\* \*\*\*\* \*\*\*\* \*\*\*\***

Plaintiff Kelvin Andre Spotts is a prisoner incarcerated at the United States Penitentiary-Canaan in Waymart, Pennsylvania. Spotts has filed a *pro se* civil rights action under 28 U.S.C. § 1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971) [R. 2], and the Court has waived payment of the filing fee by prior Order. [R. 4.]

The Court conducts a preliminary review of civil rights complaints. 28 U.S.C. § 1915A; *McGore v. Wrigglesworth*, 114 F.3d 601, 607-08 (6th Cir. 1997). Because the plaintiff is not represented by an attorney, the complaint is reviewed under a more lenient standard. *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). At this stage the Court accepts the plaintiff's factual allegations as true and his legal claims are liberally construed in his favor. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001). But the Court must dismiss a case at any time if it determines the action (a) is frivolous or malicious, or (b) fails to state a claim upon which relief can be granted. 28 U.S.C. § 1915(e)(2).

# I.

In his Complaint, Spotts alleges that on or about April 29, 2010, while he was incarcerated at the United States Penitentiary-McCreary in Pine Knot, Kentucky, Defendant Officer S. Hock, a corrections officer working in the prison, told prisoner Randy Tomlinson, a Caucasian and a member of the "Aryan Brotherhood," that Spotts, an African-American, had provided information to prison staff, including Defendants Counselor Sondra Sims and S.I.S. Officer Masschino, indicating that Tomlinson and at least five other prisoners were selling drugs within the prison. Tomlinson then called a "conference" with Spotts's "homeboys from the State of Georgia," charging that he was a "snitch," presumably inviting some form of discipline from his fellow prisoners. Spotts indicates that his "homeboys" apparently believed that Officer Hock made the story up because he bore animosity against Spotts for an unrelated incident.[1]  [R. 2 at 4.]

Spotts further alleges that on May 25, 2010, he completed a "sensitive" grievance form regarding Hock's conduct and gave it to counselor Sims for filing. The next day, however, his "homeboys" were aware of its contents and the attachments he had filed with it, and they asked him about its filing because it mentioned other prisoners by name. Spotts contends that Defendants Masschino and Sims had allowed other prisoners to read the sensitive grievance and its attachments rather than maintaining it in strict confidence. When Spotts's "homeboys" determined that he was a "snitch," the next day they walked him to the lieutenant's office where,

---

[1]  In his Complaint, Spotts alleges that Officer Hock told another officer that "he was going to get plaintiff Spotts because he had asked Mrs. Sims for some cigarettes." [R. 2 at 4.]  In prior litigation, Spotts made no mention of this statement, instead alleging that Hock told another officer that "he was going to get the plaintiff Spotts because he had filed a federal lawsuit against the government about hurricane Rita and that a private settlement had been reached for millions of dollars." *Spotts v. Hock*, No. 6: 10-cv-122-GFVT (E.D. Ky. 2010) [R. 2 at 3 therein].

after questioning by the officer, he was placed into protective custody. [R. 2 at 5.]

In his Complaint, Spotts contends that officer Hock falsely labeled him a "snitch" to other prisoners in retaliation for Spotts's successful lawsuit arising out of hurricane Rita and to start a race war between Caucasian and African-American inmates at the prison. Spotts claim that in so doing, Hock violated his right under the First Amendment to seek redress of grievances and subjected him to an increased risk of harm in violation of his rights under the Fourth and Eighth Amendments. [R. 2 at 6-7, 9.] Spotts further contends that S.I.S. Officer Masschino and counselor Sims released confidential information contained in his sensitive grievance to other prisoners, violating his rights under the First Amendment to seek redress of grievances against an officer and placing him at an increased risk of harm in violation of his rights under the Eighth Amendment. [R. 2 at 8-9.] Finally, Spotts asserts that both Warden Eric Wilson and the Bureau of Prisons failed to adequately train, manage, and discipline officers under their supervision and authority, resulting in Spotts being placed at an increased risk of harm through officer Hock labeling him a "snitch" and officers Masschino and Sims giving confidential information contained in his sensitive grievance to other prisoners. [R. 2 at 10-14.] For the following reasons, Spotts's claims against Warden Wilson and the Bureau of Prisons will be dismissed, and his claims against Hock, Masschino, and Sims will be allowed to go forward at this time.

## II.

Spotts's claims against the Bureau of Prisons must be dismissed for lack of subject matter jurisdiction, as the BOP is entitled to sovereign immunity. *Federal Deposit Insurance Corp. v. Meyer*, 510 U.S. 471, 475 (1994) ("Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit. Sovereign immunity is jurisdictional in nature."); *Corr. Serv. Corp. v. Malesko*, 534 U.S. 61, 71-72 (2001) ("If a federal prisoner in a BOP facility

alleges a constitutional deprivation, he may bring a *Bivens* claim against the offending individual

officer, subject to the defense of qualified immunity. The prisoner may not bring a *Bivens* claim

against the officer's employer, the United States, or the BOP.").

Spotts's claims against Warden Eric Wilson must be dismissed for failure to state a claim

upon which relief may be granted.  The allegations of his Complaint make clear that Wilson was

not personally involved in the conduct which forms the basis for his claims, a necessary

component for liability to attach under the civil rights laws.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937,

1949 (2009) ("In a § 1983 suit or a *Bivens* action-where masters do not answer for the torts of

their servants-the term 'supervisory liability' is a misnomer.  Absent vicarious liability, each

Government official, his or her title notwithstanding, is only liable for his or her own

misconduct."); *Gregory v. Louisville*, 444 F.3d 725, 751 (6th Cir. 2006).  A claim predicated upon

the alleged failure of a superior officer to adequately train, supervise, or control his or her

subordinates seeks to impose supervisory liability, a theory of relief unavailable in a *Bivens*

action.  *Shorts v. Bartholomew*, 255 F. App'x 46, 53 (6th Cir. 2007).  Nor does the Constitution

guarantee that a prison grievance procedure must operate in any particular fashion or provide an

effective means of resolving disputes short of litigation.  *Argue v. Hofmeyer*, 80 F. App'x. 427,

430 (6th Cir. 2003); *Overholt v. Unibase Data Entry, Inc.* 2000 WL 799760, at *3 (6th Cir. June

14, 2000).

Spotts alleges that officer Hock directly stated to fellow prisoner Tomlinson that Spotts

had implicated him in dealing drugs in the prison, and that S.I.S. Officer Masschino and

counselor Sims subsequently disclosed his "sensitive" grievance forms regarding these events to

other prisoners.[2]  Spotts alleges that this disclosure placed him at risk of injury at the hands of other prisoners.  The Eighth Amendment prohibits prison officials from acting with deliberate indifference to a substantial risk of serious harm to an inmate.  *Farmer v. Brennan*, 511 U.S. 825, 828 (1994).  It does not matter whether the risk is caused by the actions of prison officials or may come at the hands of other inmates.  *Id.* at 833.  If an inmate is believed to be a "snitch" by other inmates, he or she faces a substantial risk of assault by other inmates.  *Comstock v. McCrary*, 273 F.3d 693, 699 n.2 (6th Cir. 2001).  Some courts have held that prison officials, who are well aware of this propensity towards "self regulation" by the inmate population, may demonstrate deliberate indifference to the inmate's safety if he or she labeled the plaintiff a "snitch" to other prisoners with the intent to either provoke an actual assault by other inmates or instill the fear of an assault in the plaintiff, resulting in liability under the Eighth Amendment.  *Benefield v. McDowall*, 241 F.3d 1267, 1271 (10th Cir. 2001).  Other courts have held that such conduct is only actionable under the Eighth Amendment if the nascent risk materializes into an actual assault.  *Saunders v. Tourville*, 97 F. App'x 648, 649 (7th Cir. 2004)(affirming dismissal of claim that officer who allegedly suggested plaintiff was a "snitch" placed inmate at risk of assault, because "an inmate who suffers only a risk of physical harm has no compensable claim under the Eighth Amendment.").

Precedent from the Sixth Circuit indicates that the mere increased risk of injury to the plaintiff as a result of being labeled a "snitch," found actionable under the Eighth Amendment in *Benefield*, may be insufficient to satisfy the requirement of the Prison Litigation Reform Act that an Eighth Amendment "deliberate indifference" claim be predicated upon an actual physical

---

[2]  On June 9, 2010, Spotts filed the three "sensitive" grievance forms dated  May 25, 2010, into the record in his prior action, thus making them a matter of public record.  *Spotts v. Hock*, No. 10-CV-122-GFVT (E.D. Ky. 2010) [R. 9 therein].

injury.  *Gonzalez v. Ryan*, No. 96-2375, 1997 WL 664728 (6th Cir. Oct. 23, 1997) (affirming

summary judgment to prison guard who labeled plaintiff a "snitch" where plaintiff was never

assaulted or threatened as a result); *Thompson v. Mich. Dept. of Corrections*, 25 F. App'x 357,

359 (6th Cir. 2002) (affirming district court's dismissal upon initial screening where "[plaintiff's]

claim that he was endangered by being labeled a snitch was unsupported by any allegation of

resultant harm."); *Gibbs v. Ball*, No. 07-CV-15462-DT, 2009 WL 331604, at * 4 (E.D. Mich.

2009) (no Eighth Amendment violation where plaintiff was labeled a "rat," but did not show

actual physical injury).  The case law is not uniform in this regard, however.  *See Leary v.

Livingston Co.*, 528 F.3d 438, 442 (6th Cir. 2008) (affirming denial of qualified immunity to

prison guard who told other prisoners that plaintiff had raped a child because conduct presented

substantial risk of serious harm from other prisoners); *McPherson v. Beckstrom*, No. 10-108-

HRW, 2011 WL 13649, at *4 (E.D. Ky. Jan. 4, 2011) (citing *Benefield* with approval and

directing issuance of summons on Eighth Amendment claim that guard labeled plaintiff a

"snitch" to other inmates).

Further, Spotts contends that officer Hock's conduct also violated his right to seek redress

of grievances.  The factual basis for this claim is both unclear and as-yet undeveloped, but may

coalesce into a viable claim for relief.  *Jackson v. Peterson*, No. 96-1144, 1996 WL 636180, at

*2 (6th Cir. Oct. 30, 1996) ("Although Jackson has no inherent constitutional right or

state-created liberty interest to remain anonymous as an informant in the prison or to remain free

from being labeled a 'snitch' by the prison guards, he may state a constitutional violation if he

can establish that the guards revealed his identity to fellow inmates in retaliation against him for

having exercised his First Amendment right of access to the courts.")  The Court will therefore

direct service of summons upon the remaining defendants for further development of the record.

**III.**

Accordingly, **IT IS ORDERED** that:

1.      The claims against Defendants Warden Eric Wilson and the Bureau of Prisons are

**DISMISSED WITH PREJUDICE,** and these defendants are **DISMISSED** as parties to this

action.

2.      A Deputy Clerk in the London Clerk's Office shall prepare a "Service Packet" for

each of the following defendants in this action:

>    a.      Officer S. Hock;
>
>    b.      S.I.S. Officer Masschino; and
>
>    c.      Counselor Sondra Sims.

Each Service Packet shall include:

>    a.      a completed summons form;
>
>    b.      the Complaint [R. 2];
>
>    c.      this Order; and
>
>    d.      a completed USM Form 285.

3.      The London Deputy Clerk shall send the Service Packets to the United States

Marshals Service ("USMS") in Lexington, Kentucky, by certified mail, return receipt requested.

The Deputy Clerk shall enter the delivery receipt into the record and note in the docket the date

that the Service Packets were delivered to the USMS.

4.      The USMS shall personally serve a Service Packet upon each of the defendants at

the United States Penitentiary-McCreary, 330 Federal Way, Pine Knot, KY 42635, through

arrangement with the Bureau of Prisons.  The USMS shall additionally serve Service Packets by

certified or registered mail to the Civil Process Clerk at the Office of the United States Attorney

for the Eastern District of Kentucky and the Office of the Attorney General of the United States in Washington, D.C.

       5.      The plaintiff must immediately advise the London Clerk's Office of any change in his current mailing address. **Failure to do so may result in dismissal of this case**. The plaintiff must communicate with the Court *solely* through notices or motions filed with the London Clerk's Office. ***The Court will disregard correspondence sent directly to the judge's chambers.***

       6.      With every notice or motion filed with the Court, the plaintiff ***must*** (a) mail a copy to each defendant (or his or her attorney); and (b) at the end of the notice or motion, certify that he has mailed a copy to each defendant (or his or her attorney) and the date on which this was done. ***The Court will disregard any notice or motion which does not include this certification.***

       This the 16th day of February, 2011.

Signed By:

*Gregory F. Van Tatenhove*

**United States District Judge**